## WESTERN DRY GOODS CO. v. UNITED STATES.

District Court, W. D. Washington. July 3, 1929.

No. 11706.

W. C. Dorsey, of Omaha, Neb., Nelson R. Anderson, and Raymond D. Ogden, both of Seattle, Wash., for plaintiff.

Anthony Savage, U. S. Dist. Atty., and Jeffrey Heiman, Asst. U. S. Dist. Atty., both of Seattle, Wash.

BOURQUIN, District Judge. This is an action to recover income taxes paid for 1917, by plaintiff alleged to have been wrongfully exacted in amount $58,012.89. Involved is a single issue, as tried, viz., whether the inventory by plaintiff, taken December 31, 1917, was based on cost. If it was, plaintiff is entitled to recover; if not, its action fails.

For that year plaintiff made return that its net income subject to taxes was $110,264, upon which it paid taxes $18,968, of which $13,140 were excess profit taxes. This was in part based on its inventory of stock on hand December 31, 1917, represented in amount $410,355. In the fall of 1918 two revenue agents investigated the plaintiff's business, and found that said inventory had not been made at cost, but at 1915 or pre-war values, and $96,000 less than cost. Taking this into account (and some minor disallowances), net income was increased $109,602, and to $219,-866, and taxes (by reason of the higher excess profit brackets) were increased $58,-012, and to $76,980.

This additional tax was paid in 1920, refund was sought and denied in 1925, and this action brought in 1927. It appears that, before the agents investigated as aforesaid, and in May, 1918, the Treasury submitted a questionnaire to plaintiff, wherein E. G. Anderson, its president and treasurer for some 15 years, answered that said inventory of 1917 was not taken at cost or market, but at "normal cost, which would approximate values of 1915"; that the like inventory for 1916 was not made on that basis, "because there was very little difference in cost of the merchandise in 1915 over 1916, on account of greater part having been bought in 1915"; and that, in consequence of this difference in taking said inventories, plaintiff's report of 1917 income was "reduced * * * $125,551." Anderson accompanied this with a letter wherein he attempts to justify plaintiff's method as a "constructive policy" for protection against the inevitable sometime future decline in prices. Obviously, on its face, the method sought plaintiff's safety at the expense of government, by decreasing and withholding some $58,000 of excess prof-

its taxes due, and the agents' investigation promptly followed.

It further appears that in its application for refund is what is termed a brief by plaintiff's expert, Gregerson, wherein amongst other representations is that plaintiff had "priced the inventories for 1915, 1916, and 1917 at approximately the actual cost of merchandise in 1915," to anticipate decline in prices; that the agents' investigation aforesaid was "careful and thorough," their "increase was justified" and "agreed to" by plaintiff, but the 1916 inventory should be likewise increased.

This "brief" was duly verified by Crawford Anderson, plaintiff's vice president, who also adds under oath that two inventories were taken for 1916, one at "very low prices, far below" those of December 31, 1916, and another at actual cost upon the date last aforesaid, which was some $72,000 more. It is this latter inventory which plaintiff contended should be used in computing the 1917 taxes, which done would entitle it to recover accordingly. For to increase the 1916 inventory of goods unsold and on hand would decrease the 1917 net income and taxes. So to decrease the 1917 inventory, as increased by the revenue agents, would decrease net income and taxes.

That contention was the basis of plaintiff's application for refund, and also of its rather ingenious and ambiguous complaint in this action. That it cannot be maintained is clear, so clear that plaintiff abandoned it at the trial, shifted its ground, departed from fact to fact in endeavor to prove that, not only was the 1917 inventory taken at actual cost, but that the 1916 inventory was also.

To that end plaintiff presented, amongst other evidence, various more or less incomplete and fragmentary documents in the way of invoice, ledger sheets, etc., largely loose sheets, noted in pencil, subject to erasures and change, largely copied from work sheets and the like, made by persons not called as witnesses. In the face of objections, they are incompetent, hearsay; but in any event they, and all tending to support them, do not afford proof of the fact vital to plaintiff's recovery, viz. that the 1917 inventory was taken at cost. The truth in high probability is, as the Andersons admitted in writing and in part on oath, long before this action was brought, viz. that both inventories, 1916 and 1917, were taken at 1915 prices. It follows that the 1916 inventory, being of goods bought in 1915, was at cost, but the 1917 inventory, being of goods bought in June and November, 1916, was at 23 to 46 per cent.

less than cost; for 1915 prices were that much lower than 1916 prices.

Hence the 1916 inventory was correct, but the 1917 inventory was incorrect, too low by the amount the agents found. And this accords with the Andersons' admissions and representations, before the exigencies of this action and trial incited attempts by plaintiff to escape them by inconsistent testimony not to be credited or relied upon.

Plaintiff's effort to secure itself against future fall in prices was by the road of withholding that share of its excess profits, surprising in amount, which the excess profits tax law of 1917 compelled to be divided with government, when uncovered.

The court finds for defendant and against plaintiff. Findings may be presented. Judgment accordingly.